**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CARMEN ANDRADE,
Petitioner,

v.

No. 98-1233

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-733-578)

Submitted: September 15, 1998

Decided: November 13, 1998

Before MURNAGHAN and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard S. Fishbein, JOHN O'LEARY & ASSOCIATES, Washing-
ton, D.C., for Petitioner. Frank W. Hunger, Assistant Attorney Gen-
eral, David J. Kline, Deputy Director, Kristen A. Giuffreda, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carmen Andrade is a native and citizen of El Salvador. She petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. We affirm.

In her request for asylum and withholding of deportation, Andrade indicated that if she returns to El Salvador she will be killed by guerrillas because of her membership in a particular social group and because of her political opinion. In her testimony before the Immigration Judge (IJ), she explained that her first encounter with the guerrillas occurred in 1985. Apparently, on more than one occasion, the guerrillas stopped buses, ordered everyone to disembark, and took certain individuals in whom they were interested. In 1985, they took Andrade's fourteen-year-old son.

In 1992, the guerrillas came to Andrade's home and took her husband. They returned him the next day, whereupon he was questioned by the military for suspicion of guerilla involvement. Although the military found no evidence of such involvement, they placed monitoring devices on him. He eventually left El Salvador and entered this country.

After her husband's departure, unknown people came to Andrade's home on two occasions. They carried a photograph of Andrade and asked her daughter of her whereabouts, explaining that they wanted to speak with her. Andrade does not know why these individuals wanted to speak with her, nor does she know who they were. She suspects, however, that they were neighborhood boys who had joined the guerrillas. After learning of this incident, Andrade's husband requested that she leave El Salvador and enter this country.

2

In 1993, after Andrade arrived in the United States, she received a telephone call informing her that someone was looking for one of her sons. She also learned that her father had been attacked and beaten. In response to the foregoing activity, Andrade's daughter and other family members left their home and moved to a different location within El Salvador. Since this move, no further threatening activity has occurred.

Although crediting Andrade's testimony, the IJ determined that she presented insufficient evidence of a well-founded fear of persecution. In reaching this determination, the IJ noted that Andrade did not know why the individuals, who she believes to be guerrillas, were looking for her, and thus she could not show that the aforementioned activity occurred "on account of" one of the five grounds enumerated in 8 U.S.C.A. § 1101(a)(42) (West 1994 & Supp. 1998). The IJ also stated that Andrade presented no evidence suggesting that she could not safely relocate to a different location within El Salvador, and noted that, according to the country reports, attacks by former guerrillas are normally localized as the guerrillas lack the organizational ability to locate people in other parts of the country. Accordingly, the IJ denied her application for asylum and withholding of deportation, but granted her request for voluntary departure.

Andrade noted a timely appeal to the Board. Following the Board's summary denial, relying on the reasoning of the IJ, Andrade filed a timely petition for review in this court.

The Immigration and Nationality Act (INA) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The INA defines a refugee as a person unwilling or unable to return to his or her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42); see also M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc). The "well-founded fear of persecution" standard contains both a subjective and an objective component. The objective component requires credible, specific, and direct evidence supporting a reasonable fear that the alien faces persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). The standard for withholding of deportation is

3

more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430.

This court reviews the Board's decision for substantial evidence. See Huaman-Cornelio, 979 F.2d at 999. Accordingly, the decision may be "reversed only if the evidence presented by [the applicant] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Andrade contends, however, that the IJ, and the Board by adopting the IJ's opinion, employed an improper legal analysis, and therefore asserts that review should be de novo.

Specifically, Andrade calls attention to a portion of the IJ's opinion stating, "[t]he test for refugee status includes both a subjective and objective component. The subjective component is satisfied if the fear is well-founded."(emphasis added). Andrade asserts that this is erroneous, explaining that while an applicant must demonstrate a well-founded fear of persecution, the subjective component of this test is satisfied if the applicant demonstrates a genuine fear. Even assuming that the IJ truly misapprehended the relevant standard, we note that the IJ's opinion, and thus the Board's final decision, rested not upon the subjective component of the test,[1] but upon Andrade's inability to demonstrate that any persecution she faced, or may face upon her return, was based upon one of the five protected categories. Accordingly, we find any error harmless.[2]

Next, Andrade contends that the IJ and Board viewed the evidence "in a light detrimental" to her, rather than giving her the benefit of the doubt, and failed to consider the evidence of familial persecution. We find these contentions without merit. Contrary to Andrade's assertions, the IJ's opinion spoke to each of the events related by Andrade in her testimony. More importantly, however, we again note that the

_____

[1] In fact, the IJ even stated that Andrade "perhaps does have a subjective fear of returning to El Salvador . . . because she might be injured."
[2] For the same reasons, we also find meritless Andrade's contention that the IJ gave too much weight to "generic" country reports and failed to include a copy of certain reports as part of the record.

4

opinion did not rest a upon determination that these events were insufficient to establish fear of persecution, bur rather upon the fact that there was no evidence that the actions were taken "on account of" one of the five grounds enumerated in § 1101(a)(42).

Our review reveals that this determination is accurate. Reference to the briefs and certified administrative record discloses that Andrade testified that she did not know why the individuals, who she believes to be guerrillas, were seeking her. Further, although Andrade listed membership in a social group on her application for asylum and withholding of deportation, she offered no evidence regarding this group, nor has she presented evidence that the guerrillas might have attributed a particular political opinion to her. Thus, the IJ's and Board's conclusion that Andrade did not establish a well-founded fear of persecution "on account of" a qualifying ground is supported by substantial evidence. From this determination, it necessarily follows that Andrade cannot meet the higher standard imposed for those seeking withholding of deportation. See Huaman-Cornelio , 979 F.2d at 1000. Accordingly, we affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5